LOUISVILLE AND NASHVILLE RAILROAD COMPANY, PLAINTIFF IN ERROR, v. ANNA GOULDING, DEFENDANT IN ERROR.

1. A quarantine guard whose duty it is to prevent unauthorized persons from passing a "quarantine line" across railroad tracks is not as matter of law a trespasser upon such tracks within a few feet of the line, it being

reasonably made to appear the railroad company was probably aware of his presence there.

2. A railroad company is not as matter of law free from negligence in backing a long freight train at night without a headlight, ringing of bells or other efficient means to warn a quarantine guard on its track at his post of duty whose presence there was acquiesced in and was reasonably to be anticipated.

3. There being conflict in the evidence as to the rate of speed at which a train was running, and one witness testifying it was running at the "usual rate," evidence as to the usual rate was not reversible error.

This case was decided by Division A.

Writ of Error to the Circuit Court for Escambia County.

The facts in the case are stated in the Opinion of the Court.

*Blount & Blount,* for Plaintiff in Error.

*Maxwell & Reeves,* for Defendant in Error.

COCKRELL, J.: Frank R. Goulding, a quarantine guard, was in September, 1905, killed near Pensacola by the operation of the cars of the Louisville and Nashville Railroad Company. His widow, Anna Goulding, recovered judgment against the company for the negligent killing in the sum of seven thousand dollars. The errors assigned are the refusal of the affirmative charge requested by the company and the admission of testimony as to the speed of the train, before and after the incident.

There was evidence tending to show that the deceased was employed as a quarantine guard during the yellow fever epidemic of 1905, his station being within the freight yards of the company near the city of Pensacola, and he was run down and killed while walking upon the track of the company within a few feet of the "quarantine line," which extended across the several tracks at that place. His duty was to prevent unauthorized persons crossing that line, and he had been at that post for a week or more succeeding another guard. His presence, it may reasonably be inferred, was known to the company from the fact that he made free use of the shifting engines going to and from the city and of the company's small office situated near the line and used by the telegraph operator, from which the public was excluded. While it may well be that the freight yard at this point was not a thoroughfare to the general public in such sort as they were invited to make use of it, yet as to this guard there were circumstances from which the jury might infer he was there by invitation or right and entitled to some consideration from those operating the trains. We think further that the jury might infer from the fact that he was a quarantine guard and that the quarantine line extended across the tracks that it was contemplated he would at times be required to cross those tracks and that negligence would not as matter of law be imputed to him from the fact that he did not follow the mathematical line, but should vary a few feet either way. It was a place of some danger, it is true, but there he was exercising this police power and authority, without protest on the part of the railroad company.

Under our statute, it is not sufficient to avoid a recov-

ery to show that the deceased was negligent. The injury must have been self-imposed or caused solely by his negligence. There is no hint in the evidence nor is it claimed that the injury was self-imposed and the question for us is, was the burden cast by the statute upon the railroad company to show that it was free from negligence so fully met as to compel the Court to withdraw the question from the jury? A long freight train was backing across the "quarantine line" at night with no headlight or ringing of bells or blowing of whistle to warn any person who might be upon the track at that point, without appliances, such as a "cow catcher" or other means to avoid running down anyone, at a high rate of speed, according to some of the evidence. There was evidence that a negro with a lantern was on the foremost car, whose duty it was to signal down the brakes through intermediaries, but this precaution was taken principally for the protection of the train and the property of the railroad company. It was further in evidence that the train was actually going but three or four miles an hour, that this negro saw Mr. Goulding, who was walking the track three car lengths away in the direction in which the train was moving and whose hearing was keen, and yet no efficient warning was given either to the engineer to stop the train or to Mr. Goulding to get off the track. Under either theory it seems to us the defendant company has failed to completely overthrow the presumption of negligence.

The only other assignment of error here bore upon the refusal to strike testimony as to the rate of speed at which the train actually ran at this point. There was conflict of testimony as to the rate of speed at the time of the acci-

dent, the plaintiff contending that it was at a high rate and the defendant that it was at a slow rate. One witness testified that the rate of speed was the usual rate and it was competent to show what that "usual" rate was. In our opinion, however, the slow speed makes out a stronger case of negligence than the highest speed put in evidence, and even if this evidence were improper it would not call for reversal.

Judgment affirmed.

SHACKLEFORD, C. J., and WHITFIELD, J., concur.

TAYLOR, HOCKER and PARKHILL, JJ., concur in the opinion.